UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Sandra K. Maesse,                                Civil No. 12-2993 (FLN)

            Plaintiff,

v.                                               **REPORT AND RECOMMENDATION**

Carolyn W. Colvin,
Acting Commissioner of Social Security,

            Defendant.
_____

Jeffrey R. Hannig for Plaintiff.
Ana H. Voss, Assistant United States Attorney, for Defendant.
_____

Plaintiff Sandra K. Maesse seeks judicial review of the final decision of the Commissioner of Social Security who denied her application for disability insurance benefits. The Court has jurisdiction over the claim pursuant to 42 U.S.C. § 405(g). The parties have submitted cross-motions for summary judgment. ECF Nos. 9 and 13. For the reasons that follow, the court recommends that the Commissioner's decision be **AFFIRMED** and the case be **DISMISSED**.

## I. INTRODUCTION

Maesse alleges disability due to a right wrist impairment.[1] The Administrative Law Judge ("ALJ") ruled that Maesse was not disabled under 20 C.F.R. § 404.1520. Maesse makes two primary arguments in support of remand: (1) that the Commissioner did not acknowledge the burden shift after he concluded that Maesse did not have the residual functional capacity (RFC)

---

[1] Maesse also alleges that she suffers from bilateral shoulder pain and neck pain, which has developed due to her alteration of upper body activity caused by the limited use of her right hand/wrist. AR 53, 75, 270.

to perform past relevant work and (2) that the ALJ did not adequately consider the opinion of Maesse's treating physician.

Maesse filed an application for benefits on November 17, 2009, alleging a disability onset date of June 18, 1998. Administrative Record [hereinafter "AR"] 75, 78. In May 2011, Maesse amended the onset date to December 1, 2008.[2] AR 125. Her application was denied initially as well as upon reconsideration. Seven weeks later, she requested a hearing. AR 75–85, 92. A hearing was held in August 2011, and ALJ Denzel Busick denied Maesse's application for benefits. AR 17. Maesse appealed the ALJ's decision, and the Appeals Council denied her request for review in October 2012, making the ALJ's decision the final decision of the Commissioner. AR 1, 6. In November 2012, Maesse commenced this action seeking either a finding that she is entitled to benefits or for the court to remand for further proceedings. ECF No. 1.

## II. STATEMENT OF FACTS

### A. Background

Maesse is a 54-year-old woman who worked as a manager of a convenience store and a janitor at a restaurant before she suffered an injury to her right wrist in 1998. AR 43–44. After the injury in 1998, Maesse worked as a manager of a convenience store with some physical restrictions until 2000 when the convenience store closed. AR 46. She also continued janitorial work at a restaurant with some physical restrictions until she was laid off in 2009. AR 47. In 2008, Maesse also worked for a trucking company in the docketing division. AR 38. In 2009, Maesse began working part-time with some physical restrictions for the city of Wolverton,

---

[2] Maesse injured her right wrist in 1998, but lists December 1, 2008, as the onset date because benefits are not granted prior to one year before the date of the application for benefits. AR 125.

Minnesota, where she currently works approximately fifteen hours per week performing lawn mowing and snow removal.[3]  AR 47.

B.  **Medical Evidence – Physical Impairments**

On June 18, 1998, Maesse suffered a right wrist injury, which was originally diagnosed in an Emergency Room visit as a right wrist sprain.  AR 558.  In the subsequent months, Maesse continued to have pain.  Non-surgical measures did not relieve her pain, so in February 1999 she had surgery to remove her pisiform.[4]  AR 578.  Maesse continued to suffer from pain after the surgery.  *Id.*  In October 1999, she was referred to her primary treating physician, orthopedic surgeon J. Donald Opgrande, M.D.  AR 578.  In November 2002, Maesse underwent an ulnar shortening osteotomy.[5]  AR 586–87.  In March 2003, Dr. Opgrande stated that Maesse should work in a splint and should not be lifting anything above twenty pounds (both hands) or pushing, pulling, or forcefully gripping with her right hand.  AR 590.  These restrictions were kept in place until Maesse underwent surgery to reconstruct a ligament in her wrist in April 2004.  AR 593, 597–98.  In July 2004, Dr. Opgrande imposed restrictions on Maesse, requiring her to wear the splint and to not push, pull or lift more than ten pounds. AR 599.  In August 2004, Dr. Opgrande indicated that Maesse should start weaning herself from her splint, but in October Maesse still suffered from pain and soreness.  AR 602–03.  Dr. Opgrande concluded that Maesse had reached maximum medical improvement and nothing more could be done to improve her wrist.  AR 603.  He instructed her to wear the splint as tolerated.  AR 603.

---

[3]  Maesse's husband is the city engineer for Wolverton and aids her in attaching and detaching the equipment needed to mow lawn and remove snow.  AR 47.  Both of these duties entail driving machinery and do not require lifting, pushing, or pulling.  *Id.*

[4]  The pisiform is a small bone in the wrist.

[5]  The operation entails shortening the ulnar bone at the wrist.  The ulnar bone, or the ulna, is one of two bones that run from the elbow to the wrist.

3

In June 2009, an independent medical evaluation was performed on Maesse by orthopedic surgeon Loren Vorlicky, M.D., in which Dr. Vorlicky stated that he "would not restrict Maesse's activities with respect to her right hand/wrist complaints . . . and would allow her to return to work without restrictions."[6] AR 540–549. Dr. Vorlicky also stated that "Maesse is certainly capable of sustained gainful employment." AR 549.

In September 2009, Maesse participated in a two-day standard Workwell Functional Capacity Evaluation administered by occupational therapist Geralyn M. Heitkamp.[7] AR 439–441. During the evaluation, Ms. Heitkamp noted that Maesse "demonstrated cooperative behavior and was willing to work to maximum abilities in all test items." AR 439. Ms. Heitkamp found that Maesse "demonstrates good abilities to perform sitting, dynamic and static standing work, walking, crouching, kneeling, and stair-climbing" and "average or above average coordination for both her dominant and non-dominant hands." AR 440. The evaluation showed that Maesse had a lifting strength of waist to floor of fifteen pounds rarely, ten pounds occasionally, and five pounds frequently and a lifting strength of right front carry of twenty-five pounds rarely, twenty pounds occasionally, and fifteen pounds frequently. AR 442.

Two months later, in November 2009, Dr. Opgrande examined the functional capacity evaluation findings and concluded that Maesse was "unable to do any jobs that require forceful gripping with her right hand, or any repetitive activities with her right wrist of a forceful nature." AR 538. Additionally, he stated that "[s]he would be unable to do any activities that would require normal range of motion of her wrist . . . [and] would be unable to perform any employment that required repetitive or forceful activities of her hand." AR 538.

---

[6] The evaluation was not requested by the ALJ, but rather was performed in accordance with Maesse's claim for worker's compensation benefits. AR 540.

[7] Maesse was also administered a functional capacity evaluation in March 2005, which returned results similar to the evaluation in September 2009. *See* AR 481–500.

4

In January 2010, a consultative disability examination was performed on Maesse by Mark Yohe, M.D., who stated that "[s]he has decreased grip strength in the right hand . . . [and] can lift maybe 5-10 pounds." AR 529–37. He also stated that Maesse "has real trouble with repetitive activity as it causes significant pain and discomfort . . . [and has] difficulty with pushing and pulling with the right hand." AR 533.

At the request of the Social Security Administration, DDS physician Thomas Chisholm, M.D., reviewed Maesse's medical history in March 2010 and determined that Maesse can occasionally lift twenty pounds and frequently lift ten pounds. AR 348–55. Additionally, Dr. Chisholm stated that Maesse should restrict frequent motion above both shoulders and firm gripping and grasping with her right hand. AR 351. Dr. Chisholm stated that Maesse's impairment appeared to be "a light [occupational work category] with some manipulative restrictions" but noted that he was unsure due to Maesse's alleged onset date of June 1998. AR 347. Dr. Chisholm's assessment was reviewed and affirmed by DDS physician Aaron Mark, M.D., in April 2010.

  **C.**  **Plaintiff's Testimony**

At the administrative hearing in August 2011, Maesse acknowledged that she has held multiple jobs since she first injured her right wrist in June 1998. AR 38, 43–47. Maesse testified that since her injury in 1998 she had worked as a clerk at a grocery store, as a manager at a convenience store, as a cleaner at a restaurant, and for the city of Wolverton mowing lawns and removing snow. AR 38–47. She testified that she was able to perform her duties of these jobs while staying within the restrictions imposed by her physicians and that she received some help from coworkers. AR 46, 49–50. Maesse testified that she has little computer skills. AR 56–57.

Maesse also testified as to her daily activities. She acknowledged that she serves as a first responder and, in that capacity, provides emergency care to individuals in need. She noted that she is careful not to aggravate her wrist while executing her first responder duties. AR 53–54. Upon questioning from the ALJ, Maesse testified that she is able to maintain her house (including using a push mower to cut the grass), care for her dog, shop for groceries, and drive a motor vehicle. AR 58.

Finally, Maesse testified that she was working with a qualified rehab consultant to find a job for three years, but had not been successful due to her lack of skills and her right wrist injury. AR 55–56.

### D. Vocational Expert's Testimony

Vocational Expert ("VE") Warren Haggis testified at the hearing. AR 64–71. The ALJ posed a hypothetical question to the VE, asking him to consider a person with Maesse's work experience who could perform light occupational work. AR 64–65. The VE was asked to consider an individual who could work at a high level, pick up twenty pounds occasionally and ten pounds or less frequently, sit six hours out of an eight hour work day, stand and walk a combined six hours out of an eight hour work day with normal work breaks, and occasionally reach with the right arm in all directions while being right handed. AR 64–65. The ALJ instructed the VE that this individual would have some restrictions. AR 65. The individual would have to avoid concentrated exposure to high vibration and would suffer from some pain and discomfort that would produce mild to moderate chronic pain. AR 65. The VE testified that the hypothetical individual would not be able to perform any past relevant work and would not have any transferable skills. AR 65. However, the VE testified that a person with the residual functional capacity ("RFC") posed by the ALJ could be gainfully employed in light occupations

that only required occasional handling and reaching, such as a theater usher (42,000 full-time jobs nationally, 950 full-time jobs regionally) or counter rental clerk (98,000 full-time jobs nationally, 1,800 full-time jobs regionally).[8]  AR 66.

### E.  The ALJ's Decision

On August 29, 2011, ALJ Busick concluded that—considering Maesse's age, education, work experience, and RFC—she is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.  AR 24.  ALJ Busick followed the five step sequential process outlined in 20 C.F.R. § 404.1520.  First, he determined that Maesse had not engaged in substantial gainful activity since the alleged onset date of the disability, December 1, 2008.  AR 19.  Second,[9] the ALJ ruled that Maesse's right wrist injury, status post multiple surgeries, was a severe impairment.[10]  AR 19.  Third, the ALJ determined that Maesse's impairment was not one that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404, 1525, and 404.1526.

Step four requires the ALJ to determine whether Maesse has the RFC to perform her past relevant work and, if she cannot, step five requires the ALJ to conclude whether any other work exists in significant numbers in the national economy.  In determining Maesse's RFC, the ALJ

---

[8]  The ALJ posed another hypothetical question to the VE in which the person had the same work experience as Maesse but could not perform light work.  Rather, the hypothetical individual could only perform sedentary occupational work, meaning he/she could pick up only ten pounds on occasion, and had the limitations as set out in the first hypothetical.  AR 66.  The VE testified that the person would not be able to perform his/her past relevant work and would have no transferable skills.  AR. 66.  The ALJ did not ask the VE whether there would be any jobs in the national economy in which this hypothetical person could work, for it was understood that Maesse would be considered disabled if found to only be able to perform sedentary work. ECF No. 11 at 11 and ECF No. 13 at 6.

[9]  At the second step, the ALJ is to determine whether the individual has a severe impairment, defined as an impairment that significantly limits the individual's physical or mental ability to meet the basic demands of work activity.  20 C.F.R. § 404.1520.

[10]  The ALJ also noted Maesse's shoulder injury but recognized that she did not reference it as an injury causing any limitations.  AR 19.  The ALJ determined that if the shoulder injury did limit Maesse, it was properly accommodated by the RFC determination.  AR 20.

considered all symptoms that are consistent with the objective medical evidence and other evidence. AR 20. Based on Maesse's symptoms, the ALJ concluded: (1) there was an underlying medically determinable physical impairment and (2) the statements made by Maesse regarding the intensity, persistence, or functionally limiting effects of pain or other symptoms were not credible because they were inconsistent with her statements regarding her daily activities and objective medical evidence. AR 20–21.

The ALJ stated that Maesse has an RFC to perform a range of light work as defined in 20 C.F.R. § 404.1567(b). AR 20. The ALJ limited Maesse's RFC further within that of the light occupational work category, stating that she:

- can pick up twenty pounds on occasion and ten pounds or less frequently;
- can sit six hours out of an eight hour workday and stand and walk a combined six hours out of an eight hour workday with normal breaks;
- can frequently climb stairs, but would have to avoid ladders, scaffolds, or ropes;
- can frequently balance, kneel, crouch, and stoop and occasionally crawl;
- can occasionally reach in all directions and handle with the right dominant upper extremity;
- has no established visual or communication limits;
- would have to avoid hazards such as unprotected heights and fast or dangerous machinery;
- should avoid concentrated exposure to high vibrations; and
- would experience mild to moderate pain and discomfort likely noticeable at all times, but with appropriate medication would be able to remain active within limitations. AR 20.

Thus, although the ALJ determined that Maesse could not perform any past relevant work, he concluded that she is capable of engaging in activities on a regular and sustained basis within the parameters of the RFC. AR 21-22. And, based on the VE's testimony (as summarized

above), the ALJ determined that there exists a significant number of jobs in the national economy that Maesse can perform. AR 24.

In support of this conclusion, the ALJ noted that Maesse worked during her alleged period of disability, performs her own personal care, continues to drive, does her own grocery shopping, and remains capable of independently taking care of her house. AR 21. Additionally, the ALJ stated that the functional capacity evaluation is consistent with a finding of no greater limitation than that set out in the RFC, showing that, among other things, Maesse has fine motor dexterity and is limited to lifting maybe five to ten pounds with her right hand. AR 21. The ALJ considered the consultative examination report of Dr. Yohe, the notes and letters from treating physician Dr. Opgrande, the independent medical evaluation with Dr. Vorlicky, and the Commissioner's physical consultant's assessment by Dr. Chisholm. AR 21-22. In determining the RFC of Maesse, the ALJ also considered Maesse's admissions of her capabilities. AR 22.

### III.  STANDARD OF REVIEW

Judicial review of the final decision of the Commissioner is restricted to a determination of whether the decision is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. § 405(g) (2012); *see also Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010); *Qualls v. Apfel*, 158 F.3d 425, 427 (8th Cir. 1998). Substantial evidence means more than a mere scintilla; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In determining whether evidence is substantial, a court must also consider whatever is in the record that fairly detracts from its weight. *See Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999); *see also Morse v. Shalala*,

32 F.3d 1228, 1229 (8th Cir. 1994) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488–91 (1951)).

A court, however, may not reverse merely because substantial evidence would have supported a contrary outcome or because it would have decided the case differently. *Roberts v. Apfel*, 222 F.3d 466, 468 (8th Cir. 2000) (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). Therefore, our review of the ALJ's factual determinations is deferential, and we neither reweigh the evidence nor review the factual record de novo. *See Flynn v. Chater*, 107 F.3d 617, 620 (8th Cir. 1997); *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996); *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994). The court must "defer heavily to the findings and conclusions of the SSA." *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001). "If, after review, we find it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, we must affirm the denial of benefits." *Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996).

## IV.  CONCLUSIONS OF LAW

For the reasons set forth below, substantial evidence supports the ALJ's conclusion that Maesse is not disabled. The ALJ properly acknowledged and met his burden in regard to Maesse's ability to perform work that is available in the national economy and also adequately considered the opinion of Maesse's treating physician.

> **A.    The ALJ properly acknowledged that the burden shifted to the Commissioner to establish that Maesse could perform work available in the national economy.**

Maesse argues that the ALJ failed to acknowledge the burden shift after he concluded that Maesse did not have the RFC to perform her past relevant work.  The Commissioner argues that the ALJ acknowledged the burden shift by evaluating the application of the Medical-Vocational Guidelines and utilizing the VE's testimony to conclude that there were a significant number of jobs in the national economy that Maesse could perform. The Court agrees with the Commissioner.

At step five, the burden shifts to the Commissioner to show that the claimant can perform work existing in significant numbers in the national economy.  The Commissioner can meet this burden in one of two ways: (1) by referring to the Medical-Vocational Guidelines or (2) through the use of VE testimony.  *See Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001).  Here, the ALJ first consulted the Medical-Vocational Guidelines.  However, because the ALJ determined that Maesse cannot perform substantially all of the demands of work within a given level of exertion (the light occupational work category), the ALJ concluded that use of the Medical-Vocational Guidelines would be improper.  AR 23.  Then the ALJ turned to the VE testimony and concluded that a person with Maesse's age, education, work experience, and RFC could perform jobs available in the national economy. AR 23–24. By considering both the Medical-Vocational Guidelines and the VE testimony, the ALJ acknowledged that the burden of establishing that Maesse was able to perform work available in the national economy shifted to the Commissioner.[11]

---

[11]   The ALJ also notes in the "Applicable Law" section of his decision that, with regards to step five, "a limited burden of going forward with the evidence shifts to the Social Security Administration" and "the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do." AR 19.

11

The plaintiff relies on *Pope v. Bowen*, 886 F.2d 1038 (8th Cir. 1989), where the Court was unable to determine if the ALJ properly shifted the burden because the ALJ concluded that the plaintiff could perform a full range of sedentary work and was not disabled without the consideration of any testimony from the VE. *Id.* at 1039–40. The facts of this case are distinguishable because it is clear that the ALJ considered both the Medical-Vocational Guidelines and the VE testimony.

### B. Substantial evidence supports the ALJ's Adoption of a RFC that differs from Maesse's treating physician.

Maesse argues that the ALJ failed to accord proper weight to Maesse's treating physician, Dr. Opgrande, in determining Maesse's RFC. The Commissioner contends that the ALJ did not err when he chose not to give the treating physician's opinion controlling weight because the opinion was inconsistent with other substantial evidence on the record. The Court agrees.

Treating physicians' opinions are only given controlling weight if they are consistent with other substantial evidence in the record as a whole. *See* 20 C.F.R. § 404.1527(d)(2); *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998). To that end, the ALJ is not required to give credence to a treating physician's opinion if other evidence supports an alternative conclusion. *See Rogers v. Chater*, 118 F.3d 600, 602 (8th Cir. 1997); *Ward v. Heckler*, 786 F.2d 844, 846 (8th Cir. 1986). Treating physicians' opinions do not automatically control in the context of a disability claim because the record must be evaluated as a whole. *See Cruze v. Chater*, 85 F.3d 1320, 1324–25 (8th Cir. 1996). However, the opinions of consulting physicians who examine a claimant once or not at all do not constitute substantial evidence. *See Kelly*, 133 F.3d at 589.

Here, the ALJ's decision to deviate from the opinion of Maesse's treating physician in determining her RFC is supported by substantial evidence. The ALJ considered the independent

medical evaluation by Dr. Vorlicky,[12] the physical consultant's assessment by Dr. Chisholm,[13] and Maesse's own testimony regarding her daily activities.[14] The opinions of Dr. Vorlicky and Dr. Chishom, which are inconsistent with the opinion of Maesse's treating physician, Dr. Opgrande,[15] do not themselves constitute substantial evidence. But, the ALJ did not rely solely on the consulting physicians' opinions—he also relied on the testimony of Maesse, which supported the conclusion that she could perform more activities than determined by her treating physician, Dr. Opgrande. The ALJ has the power to resolve conflicting evidence on the record, and in this case, substantial evidence supports the ALJ's decision not to give the treating physician's opinion controlling weight. Therefore, the ALJ did not err in adopting an RFC that differs from the opinion of the treating physician.

## V.  CONCLUSION

The ALJ properly acknowledged that the burden shifted to the Commissioner at step five and substantial evidence supports the ALJ's determination of Maesse's RFC. Based upon all the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Plaintiff's Motion for Summary Judgment (ECF No. 9) be **DENIED**;

2. Defendant's Motion for Summary Judgment (ECF No. 13) be **GRANTED**; and

---

[12] Dr. Vorlicky would allow Maesse to work without restrictions and stated that she "is . . . capable of sustained gainful employment." AR 549.

[13] Dr. Chisholm determined that Maesse could perform work in the light occupational work category. AR 347.

[14] Maesse works fifteen hours per week, tends to her basic personal care issues, and is able to maintain her house, shop for groceries, and drive a motor vehicle. AR 58.

[15] Dr. Opgrande determined that Maesse would be unable to perform any jobs that required forceful gripping, normal range of motion, or repetitive or forceful activities with her right hand. AR 538.

13

    3.    The Commissioner's decision be **AFFIRMED** and the case be **DISMISSED WITH PREJUDICE**.

DATED: January 5, 2014                      *s/Franklin L. Noel*
                                                     FRANKLIN L. NOEL
                                                     United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **January 21, 2014** written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under the rules shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **January 21, 2014,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.